950 P.2d 1289

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Salvador C. NEZ, Defendant–Appellant.**

**No. 23591.**

Court of Appeals of Idaho.

Dec. 19, 1997.

---

Edgar R. Frachiseur, Mountain Home, for Defendant–Appellant.

Alan G. Lance, Attorney General, Margaret R. Hughes, Deputy Attorney General, Boise, for Plaintiff–Respondent.

PERRY, Judge.

Salvador C. Nez appeals from the district court's order revoking probation and ordering execution of Nez's original sentence of five years indeterminate, with two years fixed, for driving under the influence of alcohol (DUI). I.C. § 18–8004. We affirm.

## I.

### FACTS AND PROCEDURE

Nez entered a guilty plea to felony DUI. The district court sentenced Nez to a unified five-year term, of which two years were fixed. The district court retained jurisdiction for 180 days. Thereafter, the district court suspended Nez's sentence and placed Nez on probation for the balance of his five-year term. One condition of Nez's probation required him to report to his probation officer every Tuesday until Nez obtained a permanent residence.

During the time he was on probation, Nez had three probation officers: originally, Larry Jay; then officer Peace; and, finally, Gary Luck. On December 4, 1995, officer Jay filed a report of violation alleging that Nez had violated probation. The report stated:

> At the time of defendant's jurisdictional review, he did not have a permanent address. I requested that he be ordered to report at 9:00 a.m. every Tuesday until he could establish a permanent residence. Defendant called me on October 9, 1995 stating he had no transportation to get to Mountain Home. At that time, defendant reported he was staying at the Tahitian Motel Room # 3 in Nampa, Idaho.
>
> Defendant has made no attempt to contact this officer since that date. On November 21, 1995, I called the Tahitian Motel and was informed that the defendant had checked out approximately three (3) weeks prior. It would appear the defendant has willfully absconded supervision.

On December 15, 1995, a bench warrant was issued for Nez's arrest. One year later, on December 18, 1996, a probation violation hearing was held with Nez present and in custody. Officer Luck, Nez's current probation officer, testified that according to his probation file, Nez had only made one phone call to officer Jay and had not made any other contact with his probation officers. The district court revoked Nez's probation and issued an order executing the original five-year sentence, with two years fixed. Nez appeals.

## II.

### ANALYSIS

Nez lists five issues in his statement of issues on appeal:[1] (1) the district court erred when it admitted irrelevant testimony regarding Nez's failure to contact his probation officer after Nez's initial violation; (2) character evidence given by Nez's probation offi-

cer should have been excluded under I.R.E. 404(b); (3) Nez's right to confront witnesses under the federal and state constitutions was denied by the district court; (4) the district court abused its discretion by not ordering an updated presentence investigation (PSI) report; and (5) the district court abused its discretion by not giving Nez an opportunity to exercise his right of allocution before sentencing.

### 1. Testimony of Probation Officer

Nez's two evidentiary issues will be discussed together. Nez argues that officer Luck's testimony was irrelevant to the violation charged and that it was character evidence that should have been barred by I.R.E. 404(b). Officer Luck testified that Nez never contacted Luck, nor Luck's predecessors, officers Jay and Peace. Nez claims that only one incident is relevant to this appeal—the charged violation that Nez failed to contact Jay—and that any subsequent failure to contact his probation officers is irrelevant. Nez also claims that this testimony was character evidence of other wrongs which were offered to prove Nez acted in conformity with that character and was thus inadmissible.

■ It is important to note that a probation revocation hearing is altogether different from an actual criminal trial. The Idaho Rules of Evidence do not apply to a probation revocation proceeding. I.R.E. 101(e)(3); *State v. Egersdorf,* 126 Idaho 684, 685, 889 P.2d 118, 119 (Ct.App.1995). However, the admission of evidence is not unbridled; evidence should only be admitted at a probation revocation hearing if it is found to be credible and reliable. *Id.,* 126 Idaho at 686, 889 P.2d at 120.

■ Nez's contentions are without merit. The testimony by Luck was in regards to a continuing violation by Nez. Nez failed to

---

1. The state responds to another issue that Nez may raise in the argument portion of his brief. Specifically, the state believes Nez may assert that he had a permanent residence and, therefore, under the terms of his probation, was not obligated to report to his probation officer once a week. The record does not support such an assertion. Furthermore, Nez failed to list this as an issue in his statement of issues on appeal. Generally, the failure of the appellant to include an issue in the statement of issues will eliminate consideration of that issue on appeal. I.A.R. 35(a)(4); *Kugler v. Drown,* 119 Idaho 687, 691, 809 P.2d 1166, 1170 (Ct.App.1991). Therefore, we will limit our opinion to the issues listed in the statement of issues.

appear at his first meeting with his probation officer and then allegedly absconded for the duration of his time on probation. This conduct was all part and parcel of the probation violation for which he was charged. Therefore, the evidence was relevant and also was not evidence of "bad character" as contemplated by Rule 404(b).

Moreover, the evidence was credible and reliable. Nez has never asserted that he complied with the terms of his probation by meeting with his probation officers. The record presents no reason for the district court to disbelieve officer Luck's testimony, which was corroborated by the report of violation filed by officer Jay. Thus, we conclude that the district court did not err when it allowed the introduction of officer Luck's testimony at the probation revocation hearing.

### 2. Right to Confrontation

Nez appears to argue that his right to confrontation was violated in two aspects. First, Nez alleges that he was denied his right to review his probation file before officer Luck testified regarding the file's contents. Second, Nez contends that he was denied his right to confrontation because Luck testified regarding entries in the file made by his predecessor, officer Jay. Jay was not called to testify.

■ When the state questioned Luck regarding the contents of the probation file, Nez objected, claiming it was a violation of his due process rights and his right to confrontation. The following colloquy took place between the district court and Nez's attorney:

[DEFENSE COUNSEL]: Your Honor, I would maintain that it—if the file exists and this witness has custody of them, that they be produced before he's permitted to summarize the contents. I think that the defendant has a basic right of confrontation under the Idaho constitution and the federal constitution and that it would encompass being able to see the evidence rather than have this witness characterize it.

THE COURT: The witness has testified that he has the files in his possession. I

note from looking at it that he has something in front of him. You're certainly welcome to take a look at that. What we're going to do is we're going to go into recess. I'll give you a chance to look through that file with Mr. Luck and satisfy yourself as to the contents of that file. We'll be in recess.

. . . .

THE COURT: We're back on record in CR–MD–94–00512, State of Idaho versus Salvador C. Nez.

Have you had an ample opportunity to investigate the contents of that file or what's going on at this point?

[DEFENSE COUNSEL]: I have had ample opportunity to investigate the portion of the file that the probation officer was kind enough to point out to me as being the relevant portion he was referring to.

THE COURT: Are you satisfied that you've had sufficient time to review the contents of that file?

[DEFENSE COUNSEL]: As it pertains to this allegation, yes, sir.

Nez claims that officer Luck's testimony regarding the file was a violation of his right to due process and his right to confrontation. However, Nez was given an opportunity to review the file at the hearing and was then given an opportunity to cross-examine officer Luck regarding the information contained in the file. In fact, Nez's attorney advised the district court that counsel had been given sufficient time to review the file. Thus, there was no error in this regard and Nez can hardly claim now that his due process rights were violated because he did not have an opportunity to review the file.

■ Nez also claims he was denied the right to confrontation when officer Luck testified that Nez had never contacted any of his probation officers. Nez contends that Jay, his former probation officer, was not on the witness stand to assert this allegation and that Nez was denied his right to confrontation because he could not cross-examine Jay.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prose-

cutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." It has long been held that this clause does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the statements violate the literal terms of the clause. *Idaho v. Wright,* 497 U.S. 805, 813, 110 S.Ct. 3139, 3145, 111 L.Ed.2d 638 (1990); *see also Maryland v. Craig,* 497 U.S. 836, 847–48, 110 S.Ct. 3157, 3164–65, 111 L.Ed.2d 666 (1990) (The Confrontation Clause "permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial.").

■ Admission of a statement, pursuant to a firmly rooted hearsay exception, satisfies the constitutional requirement of reliability because we have faith in longstanding judicial and legislative experience in assessing the trustworthiness of certain types of out-of-court statements. *Wright,* 497 U.S. at 817, 110 S.Ct. at 3147. Where a hearsay statement does not fall within a firmly rooted hearsay exception, it is presumptively unreliable and inadmissible under the Confrontation Clause, and must be excluded, at least absent a showing of particularized guarantees of trustworthiness. *Id.,* 497 U.S. at 819, 110 S.Ct. at 3148. The business records exception to the hearsay rule, I.R.E. 803(6), is a firmly rooted hearsay exception. Such evidence is admissible because the circumstances behind its creation imply a high degree of veracity. *Christensen v. Rice,* 114 Idaho 929, 934, 763 P.2d 302, 307 (Ct.App. 1988). A business record should be received into evidence unless the trial court doubts its reliability. *Id.* Therefore, in the case at hand, if information from the probation file was admitted as a business record, then Nez's contention that the testimony violated his right to confrontation must fail.

■ Idaho Rule of Evidence 803, regarding the business records exception to the hearsay rule, provides in part:

The following are not excluded by the hearsay rule....

. . . .

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The probation file at issue here fits within the business records exception to the hearsay rule. Probation officer Luck testified as follows regarding the file:

[COUNSEL]: Mr. Luck, in your employment with the probation and Parole office, do you keep files on people that you are supervising on probation.

[LUCK]: Yes.

[COUNSEL]: Is that a regular and necessary part of your business?

[LUCK]: Yes.

The information kept in the probation files is a data compilation entered by the probation officer, a person with knowledge, and it is the regular and necessary part of the probation officer's work. Therefore, the part of the probation file testified to in this case—a ministerial entry regarding Nez's failure to contact his probation officers—fits within the business records exception to the hearsay rule.

■ In addition, the probation file falls within the public records exception to the hearsay rule. Idaho Rule of Evidence 803(8) provides:

Public records and reports. Unless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, or

matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law. The following are not within this exception to the hearsay rule: (A) investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case; (B) investigative reports prepared by or for a government, a public office or an agency when offered by it in a case in which it is a party; (C) factual findings offered by the government in criminal cases; (D) factual findings resulting from special investigation of a particular complaint, case, or incident, except when offered by an accused in a criminal case.

The probation file is a data compilation taken by the probation officer and is part of his duty to enforce the probation conditions. The probation file entry here, as we noted earlier, is a ministerial report of Nez's failure to contact his probation officers, and thus it is neither an investigative report nor a factual finding. Therefore, this particular entry falls within the public records exception to the hearsay rule.

Because the business records exception and the public records exception are firmly rooted exceptions to the hearsay rule, and because traditional exceptions to the hearsay rule do not violate the defendant's right to confrontation, we hold that the district court did not err when it allowed officer Luck's testimony regarding the entries in Nez's probation file and Nez's failure to meet with his previous probation officers.

### 3. Failure to Update the PSI Report

 Nez contends that the district court abused its discretion by not ordering an update of Nez's PSI report. However, Nez did not make an objection to the original PSI report and, for that matter, did not even request an update. Generally, we will not entertain, for the first time on appeal, a challenge to the contents of a PSI report. *Svenson v. State,* 110 Idaho 161, 162, 715 P.2d 374, 375 (Ct.App.1986). We will only address the issue on appeal if the require-

ments of I.C.R. 32 have been disregarded. *State v. Sensenig,* 110 Idaho 83, 86, 714 P.2d 52, 55 (Ct.App.1985). Rule 32 does not require that a district court order an update of a PSI report. Thus, because Nez failed to object to the contents of the PSI report below and the district court did not disregard Rule 32, we will not consider this issue for the first time on appeal.

### 4. Right of Allocution

 Nez contends that he was denied his right to allocution when the district court failed to allow Nez to make a statement before probation was revoked. Idaho Criminal Rule 33(a)(1) provides:

(a) Sentence. (1) Time for judgment and sentence. After a plea or verdict of guilty, if the judgment be not arrested nor a new trial granted, the court must appoint a time for pronouncing judgment and sentence, which, in cases of felony, must, unless waived by the defendant, be at least two (2) days after the verdict. *Before imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally to ask if the defendant wishes to make a statement and to present any information in mitigation of punishment.* Pending sentence the court may commit the defendant or continue or alter the bail.

(emphasis added). Our state recognizes that before the imposition of sentence, a criminal defendant should have the opportunity to personally address the court before sentencing in an attempt to mitigate punishment. I.C.R. 33(a)(1); *State v. Carey,* 122 Idaho 382, 386, 834 P.2d 899, 903 (Ct.App.1992). The failure of a trial court to afford the right of allocution is not grounds to reverse the judgment of conviction, but it does require a remand to permit resentencing where the defendant will be allowed to speak in mitigation. *Carey,* 122 Idaho at 386, 834 P.2d at 903, *citing Van Hook v. United States,* 365 U.S. 609, 81 S.Ct. 823, 5 L.Ed.2d 821 (1961). However, we are not presented with the issue of whether the district court failed to give Nez his right to allocution before imposing sentence. We are presented with the

specific question whether a criminal defendant must be afforded the right to allocution at a probation revocation proceeding, where the district court revokes probation and simply orders the execution of the original sentence. Neither the United States Supreme Court nor the Idaho Appellate Courts have addressed this specific question.

 Initially, it is important to note that the due process rights of a criminal defendant are somewhat diminished at a probation revocation hearing. The United States Supreme Court has announced:

> Parole arises after the end of criminal prosecution, including imposition of sentence.... Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.

*Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).[2] Given the previous judgment of conviction, the state has an overwhelming interest in being able to return the defendant to prison without the burden of a new adversary criminal trial. *Id.*, 408 U.S. at 483, 92 S.Ct. at 2601. Yet, the state has no interest in revoking probation without some informal procedural guarantees. *Id.* Thus, the *Morrissey* Court determined that while a parolee has a diminished expectation of procedural protections, each parolee should be afforded some process. The minimum requirements of due process include: (1) written notice of the violation; (2) disclosure of evidence; (3) an opportunity to be heard in person and present evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral and detached tribunal; and (6) a written statement by the fact finder explaining the evidence relied on and the reasons for revoking parole. *Id.*, 408 U.S. at 489, 92 S.Ct. at 2604. It is in light of this diminished right to due process that we must determine whether

a person facing probation revocation has the right to allocution.

The right of allocution is a traditional, common-law right of a criminal defendant which was recognized as early as 1689. *Green v. United States*, 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961). At that time, a criminal defendant was not permitted counsel and could not testify on his own behalf. *Boardman v. Estelle*, 957 F.2d 1523, 1526 (9th Cir.1992). The defendant's right of allocution was his or her only opportunity to address the court.[3] *Id.* The United States Supreme Court has determined that, although our system has changed drastically, the right to allocution is still vital to a defendant's defense.

> We are not unmindful of the relevant major changes that have evolved in criminal procedure since the seventeenth century— the sharp decrease in the number of crimes which were punishable by death, the right of the defendant to testify on his own behalf, and the right to counsel. But we see no reason why a procedural rule should be limited to the circumstances under which it arose if reasons for the right it protects remain. None of these modern innovations lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation.

*Green*, 365 U.S. at 304, 81 S.Ct. at 655.

After recognizing the importance of the right to allocution in *Green*, the Court concluded the next year in *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), that although a judge's failure to ask a defendant if the defendant had anything to say was a violation of Federal Criminal Rule 32(a)(1)(C), it was not an error of constitutional dimensions and could not support a writ of habeas corpus. However, the Court was not presented with a defendant who was affirmatively denied an opportunity to speak

---

2. Although there may be minor differences between probation and parole, the United States Supreme Court has found no discernable difference, in terms of due process, between parole revocations and probation revocations. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 n. 3, 93 S.Ct. 1756, 93 S.Ct. at 1759 n. 3, 36 L.Ed.2d 656 (1973).

3. The common-law right to allocution has been codified in Federal Rule of Criminal Procedure 32(a)(1)(C). Failure to comply with this rule requires a remand to allow the defendant an opportunity to speak before resentencing. *United States v. Navarro–Flores*, 628 F.2d 1178, 1184 (9th Cir.1980).

after the defendant requested the opportunity. Therefore, *Hill* left open the question whether a defendant who asks the court to speak has a constitutionally guaranteed right to do so. *Boardman,* 957 F.2d at 1527. The Court has not yet expressly recognized a constitutional basis for the right of allocution. *McGautha v. California,* 402 U.S. 183, 217, 91 S.Ct. 1454, 1472, 28 L.Ed.2d 711 (1971) ("This Court has not directly determined whether or to what extent the concept of due process of law requires that a criminal defendant wishing to present evidence or argument presumably relevant to the issues involved in sentencing should be permitted to do so.").

Without definite guidance from the Supreme Court, the Ninth Circuit decided the question after carefully critiquing the decisions of other circuits.[4] The Ninth Circuit concluded:

> Recognizing the personal nature of the Sixth Amendment's guarantee of the right to make a defense, the unique ability of a defendant to plead on his own behalf, and the Supreme Court's acknowledgment of the continuing vitality of the practice of permitting a defendant to allocute before sentencing, we hold that allocution is a right guaranteed by the due process clause of the Constitution. Our holding is limited to circumstances in which a defendant, either unrepresented or represented by counsel, makes a request that he be permitted to speak to the trial court before sentencing. If the trial court denies that request, the defendant has not received due process.

*Boardman,* 957 F.2d at 1529–30. This enlightens our understanding of the constitu-

tional importance of the right of allocution, but we are not faced with this precise set of circumstances.

Here, Nez did not request an opportunity to speak. We must determine whether the district court had an affirmative obligation to inquire whether Nez wanted to allocute at his probation revocation hearing and, if so, whether the failure to inquire constitutes reversible error.

In *United States v. Core,* 532 F.2d 40 (7th Cir.1976), the Seventh Circuit held that allocution should be allowed, but is not required when the trial court simply executes the original sentence after revoking probation.

> [Federal Rule of Criminal Procedure] 32(a)(1) does not specifically mention probation revocation hearings but only requires the right of allocation be given before imposing sentence. We interpret the rule to mean that allocution is *required* only before imposing the original sentence.... However, we believe the better practice would be for the trial court to personally address the defendant and permit him to speak regardless of whether it is at the time of original sentencing, at a hearing on a motion to reduce a sentence previously imposed, or, as in this case, at a revocation of probation proceeding.

*Id.,* 532 F.2d at 42.[5] The Seventh Circuit later clarified its position by stating that the "right of allocution is implicated only before the *imposition* of sentence, not in all sentencing situations." *United States v. Barnes,* 948 F.2d 325, 329 (7th Cir.1991) (emphasis added). The Fifth and Eighth Circuits have likewise concluded that the right of allocution attaches before the imposition of sentence,

---

4. The following cases held that the right to allocution is constitutionally guaranteed when the defendant is affirmatively denied the opportunity to speak: *United States v. Moree,* 928 F.2d 654 (5th Cir.1991) (defendant's rights to be present and to allocute are of constitutional dimension); *United States v. Jackson,* 923 F.2d 1494 (11th Cir.1991) (same); *Ashe v. North Carolina,* 586 F.2d 334 (4th Cir.1978) (When a defendant effectively communicates his or her desire to the trial judge to speak prior to the imposition of sentence, it is a denial of due process not to grant the defendant's request.).

Some circuits, on the other hand, have held that the right of allocution is not constitutionally

guaranteed. These courts rely primarily on *Hill,* 368 U.S. at 428, 82 S.Ct. at 471; *United States v. Coffey,* 871 F.2d 39 (6th Cir.1989) (no constitutional basis for the right to allocution); *United States v. Prince,* 868 F.2d 1379 (5th Cir.), *cert. denied,* 493 U.S. 932, 110 S.Ct. 321, 107 L.Ed.2d 312 (1989) (no constitutional violation where defendant did not ask to address court).

5. Even though the circuit courts have analyzed the right to allocution pursuant to Fed.R.Crim.P. 32(a)(1), we find their reasoning persuasive because the relevant language of I.C.R. 33(a)(1) is nearly identical to that of Fed.R.Crim.P. 32(a)(1).

but not in all sentencing situations. *United States v. Turner,* 741 F.2d 696, 699 (5th Cir.1984) (the right of allocution must be afforded when a sentence is deferred and later imposed following a revocation of probation); *United States v. Patterson,* 128 F.3d 1259 (8th Cir.Mo.) (defendant entitled to allocution before court imposes a new sentence at probation revocation hearing). The Sixth Circuit has gone one step further and determined that the right of allocution is not required at a probation revocation hearing even when the defendant is resentenced after probation is revoked. *United States v. Coffey,* 871 F.2d 39 (6th Cir.1989) (allocution is not required before resentencing after probation revocation). Drawing from this body of case law, the Ninth Circuit stated: "We hold that the provisions of Rule 32(a)(1) apply to sentencing after revocation of supervised release when the district court imposes a new sentence based on conduct that occurred during supervised release." *United States v. Carper,* 24 F.3d 1157, 1162 (9th Cir.1994).

We believe that the reasoning of the foregoing cases is sound. Both Fed.R.Crim.P. 32(a)(1) and I.C.R. 33 require that the trial court afford the defendant the right of allocution before "imposing sentence." When the trial court orders into execution an original sentence, which has already been imposed, the defendant no longer has the same needs to mitigate sentence. The sentence has already been established, the trial court is now simply deciding whether, based on the defendant's probation violations, probation should be revoked and the original sentence executed. We conclude that allocution should be required if the trial court had not originally imposed sentence, but had withheld judgment until the probation revocation proceedings.

■ In this case, after the district court found Nez in violation, it inquired of both counsel whether either had comments or recommendations to put forth. The prosecutor and Nez's counsel each presented argument. There is no indication in the record that Nez wanted to address the court or made a request to do so. Thereafter, the district court stated:

In view of the history of this case, the court finds it appropriate and I'll simply order the sentence previously suspended be reinstated, the defendant be remanded to the custody of the Board of Correction for execution of the sentence.

Therefore, we conclude that the purpose of allocution—to allow defendants an opportunity to mitigate their punishment—is better promoted when the defendants are able to address the court at the probation revocation hearing where sentence is first imposed, after an earlier withheld judgment, or in cases in which resentencing follows a vacated sentence. In this case, however, the district court did not impose a new sentence, it simply ordered the execution of Nez's original sentence. Thus, under the facts presented in this particular case, the district court did not commit reversible error when it failed to affirmatively offer Nez the opportunity to speak. We note that although our limited holding today does not *require* the right of allocution at a probation revocation proceeding when the original sentence is ordered executed, we do believe that the opportunity for allocution is the preferred or better practice in all sentencing situations.

### III.

### CONCLUSION

We conclude that the district court did not err when it admitted the testimony of probation officer Luck. Nez's right to confrontation under the federal and state constitutions was not violated. We further hold that the district court did not err in failing to update the PSI report. Finally, the district court did not commit reversible error when it failed to offer Nez an opportunity to allocute. Therefore, the district court's order revoking Nez's probation and imposing sentence is affirmed.

LANSING, C.J., and SCHWARTZMAN, J., concur.