703 P.2d 548

**The STATE of Arizona, Appellee,**

v.

**William Parker BEST, Appellant.**

**No. 2 CA–CR 3709.**

Court of Appeals of Arizona,
Division 2, Department B.

May 9, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Diane M. Ramsey, Phoenix, for appellee.

Charles M. Giles, P.C., Jim D. Himelic, P.C. by Jim D. Himelic, Tucson, for appellant.

## OPINION

LIVERMORE, Judge.

On September 28, 1983, a man presented a package to United Parcel Service (UPS) for transport. The man prepared a label giving defendant's name and address as the shipper. The UPS clerk became suspicious of the contents of the package. She had a UPS security officer determine the license plate of the man's car, which was listed to defendant's roommate. A UPS supervisor opened the package, concluded that it contained marijuana, and notified the Department of Public Safety (DPS). A DPS officer picked up the package, reopened it, and came to the same conclusion about its contents. He interviewed the defendant at the defendant's apartment. Defendant admitted that he had shipped the marijuana. Defendant now appeals from his conviction for unlawful transfer of marijuana.

Defendant first contends that the search of the package by UPS employees was unconstitutional and that, in any event, the DPS officer needed a warrant to reinvade the already opened box. Both arguments fail under *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).

Defendant's second argument is that the UPS receipt in his name, recovered from his home, and the package with its label showing him as shipper were improperly admitted because there was inadequate foundation to show that he wrote the receipt and label and without such foundation the writings were hearsay. This borders on the frivolous, given defendant's admission that he was the shipper and evidence to the same effect from his roommate. But even without that, it could be inferred that defendant wrote the documents from the fact that the receipt was recovered at his home and that the shipper departed in a car belonging to defendant's roommate. Under Rule 901(b)(4), Rules of Evidence, 17A A.R.S., authentication can be accomplished by circumstantial evidence. *State v. Adamson*, 136 Ariz. 250, 257, 665 P.2d 972, 979, cert. denied, 464 U.S. 865, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983). See also *State v. Emery*, 141 Ariz. 549, 551, 688 P.2d 175, 177 (1984); *State v. Fisher*, 141 Ariz. 227, 241–42, 686 P.2d 750, 764–65 (1984).

■ A fingerprint examiner lifted defendant's fingerprints from the plastic bags containing marijuana that were within the package shipped at UPS. The examiner died two weeks before trial. The day before trial this fact was revealed to the court. During her opening statement, the prosecutor said:

"But because it's standard police practice and because it's the proper way to do things before you lodge such a serious charge against someone, they sent it through forensics to have it checked for fingerprints and to make sure it was marijuana.

And we will do our best to bring you the scientific evidence on that as well. We're going to have some difficulty. The lady who did the fingerprints died about two weeks ago, very unexpectedly."

During his opening statement, defense counsel said:

"And I would just ask you to listen carefully to what we say about what evidence is going to be heard or what has been heard and what you actually hear from the witness stand. Because I don't think you're going to hear all the evidence that Miss Davidon told you you're going to hear. I think there are going to be some problems there.

. . . .

But as you heard the charge read, Bill is charged with transferring marijuana. It doesn't matter how much. As long as it's a useable quantity, it could be a pound, it could be a thousand pounds. But he's charged with transferring marijuana. And to him you bet it's a serious charge. But maybe to the police it wasn't so serious. And so maybe the police, and I think you'll agree with me by the time you hear the evidence, did shoddy police work."

When it came time to introduce the fingerprint evidence, it appeared that only the records of the deceased examiner could establish that certain fingerprints had been lifted from the plastic bags. Another available witness could testify that prints had been lifted from the bags but not that the labeled prints were the ones lifted. If the labeled prints were admitted, the witness could personally identify them as defendant's prints. The trial court excluded the labeled prints because the deceased examiner could not be cross-examined and thus admission of the prints would violate the confrontation clause. He did allow the prosecutor to prove that the packages had been dusted for prints and that the examiner had died. Defendant contends that this allowed proof by innuendo that defendant's prints were on the bags and that this is prosecutorial misconduct.

Although not addressed in these terms below, there is a substantial argument that the examiner's report was inadmissible hearsay under Rule 803(8)(B), Rules of Evidence, 17A A.R.S., because of the exclusion from the official records exception to the hearsay rule "in criminal cases matters observed by police officers and other law enforcement personnel." One court has held that a publicly employed chemist is a law enforcement officer under that rule. *United States v. Oates*, 560 F.2d 45 (2d Cir.1977). Other courts have looked to the purpose of the exclusion expressed in the Senate Report accompanying the rule:

"Ostensibly, the reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases." 1974 U.S. Code Cong. & Ad. News 7051, 7064.

They have then held that routine, non-adversarial observations, even of police officers, are admissible. See, e.g., *United States v. Quezada*, 754 F.2d 1190 (5th Cir. 1985); *United States v. Orozco*, 590 F.2d 789 (9th Cir.), cert. denied, 442 U.S. 920, 99 S.Ct. 2845, 61 L.Ed.2d 288 (1979). We have reached the same conclusion with respect to the use of a police report of a deceased officer to prove chain of custody. *State v. Silva*, 137 Ariz. 339, 670 P.2d 737 (App.),

cert. denied, 464 U.S. 999, 104 S.Ct. 500, 78 L.Ed.2d 692 (1983). We believe the analysis in *Quezada* to be the correct one because it comports with the purpose of the hearsay rule and its exceptions, that is, to assess the admissibility of evidence in terms of its probable reliability.

Applying the purposes of the exclusion of observations of law enforcement officers to the facts of this case, we conclude that the report of the deceased examiner that certain prints had been lifted from certain bags should have been admitted. Such lifting and recording is, for a fingerprint examiner, the type of routine daily task that has always been thought to be reliably done under both the business and official records exceptions to the hearsay rule. The adversarial, confrontational risk of misperception and misrecording present at an arrest of a criminal at the scene of the crime is about as far removed from this routine exercise in a police laboratory as it is possible to imagine. While it is always conceivable that there has been misrepresentation as to where particular prints were lifted, there is nothing in the facts of this case to suggest any motive to falsify, or indeed any risk of falsification. That is demonstrated here by the corroborative evidence of an independent witness that prints had been lifted from the particular bags in question. Under normal hearsay analysis, therefore, the examiner's report should have been admitted under Rule 803(8)(B). Even if inadmissible under that rule, admission could be equally well-premised, as we said in *Silva*, supra, under Rules 803(24) and 804(b)(5).

■ What we have said above also answers any confrontation problem in this case. The witness was unavailable because deceased; the evidence fit a well-established hearsay exception; its reliability was assessable independently of the exception; and because it was cumulative, it was neither crucial nor devastating. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *State v. Martin*, 139 Ariz. 466, 679 P.2d 489 (1984).

■ Because the evidence excluded was admissible, any claimed innuendo was true. Reversal would not be appropriate if a retrial would involve admission of what is presently objected to. *State v. Garrison*, 120 Ariz. 255, 258, 585 P.2d 563, 566 (1978). In any event, any error in the innuendo would, on this record, be harmless.

■ There is an additional reason why the manner in which the fingerprint evidence that came in was proper in this case. Defense counsel was following the old adage that when the evidence and law are against you, try the police or the prosecutor. The defense theory was that, had the police but tried harder, they would have discovered the "bushy-haired intruder" responsible for the crime. It was perfectly proper to rebut this innuendo, as the trial court found, by proving police efforts to obtain other evidence that a jury might expect to hear, even though those efforts were thwarted by an untimely death. See Saltzburg, *A Special Aspect of Relevance: Countering Negative Inferences Associated With the Absence of Evidence*, 66 Calif. L.Rev. 1011 (1978). The evidence in this case, which we hold properly admitted to rebut the defense innuendo, proved exactly what the prosecutor said would be proved in her opening statement. There is no error.

■ Defendant's final contention is that the prosecutor failed to plea bargain because of personal animus toward the defense counsel. *State v. Martin*, supra 139 Ariz. at 481, 679 P.2d at 504. Defendant was charged with a class two felony, he was offered a plea to a class six felony, and he was further offered a plea to a charge that could be treated as a misdemeanor if he would take a lie detector test to demonstrate that his present involvement was an isolated incident. On these facts, notwithstanding evidence of ill-feeling between defense counsel and some members of the prosecutor's office, a failure to bargain cannot be established. It is not impermissible to condition reduction of what the legislature has designated as a serious felony to a misdemeanor by some demonstration that

the defendant is not involved in the trade in controlled substances. See *King v. Neely*, 143 Ariz. 329, 693 P.2d 984 (App.1984). There is no presumption that one's first involvement with the law is one's first descent into criminality.

What defense counsel appears to want in this case is that we serve as referee in one of the distressingly common professional spats between prosecutors and defense counsel in Pima County. See *State v. Noriega*, 142 Ariz. 474, 483–86, 690 P.2d 775, 784–87 (1984); *State v. Webb*, 140 Ariz. 321, 681 P.2d 473 (1984). We decline that invitation. We observe, however, that many in the criminal bar seem to believe that exercising warm zeal on behalf of one's client is best demonstrated by impugning the integrity of one's opponent. Nothing could be less true. Such conduct invites retaliation and distracts the trier, whether court or jury, from the real issues in the case. We hope that this admonition may cause some mature reflection on the requirements of professionalism in the trial of criminal cases.

The judgment and sentence are affirmed.

HATHAWAY, P.J., and LACAGNINA, J., concur.