NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LAURA STELMASEK, *Appellant.*

No. 1 CA-CR 15-0393
1 CA-CR 15-0860
(Consolidated)
FILED 6-8-2017

Appeal from the Superior Court in Yavapai County
No.  P1300CR201100653
The Honorable Jennifer B. Campbell, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza C. Ybarra
*Counsel for Appellee*

Yavapai County Public Defender's Office, Prescott
By Nicole S. Murray
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Maurice Portley[1] delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Patricia K. Norris joined.

---

**P O R T L E Y**, Judge:

¶1　　　Laura Stelmasek appeals her convictions and sentences for first-degree murder, conspiracy to commit first-degree murder, tampering with physical evidence, and concealment of a dead body. Finding no reversible error, we affirm.

## BACKGROUND[2]

¶2　　　Stelmasek was married to the victim for about twenty years. During the year before the victim was killed, their relationship was turbulent, and Stelmasek confided to friends that she wanted to end the marriage.

¶3　　　Amidst the marital turmoil, Stelmasek rekindled a relationship with her former boyfriend, Marzet Farris. Stelmasek and Farris exchanged hundreds of emails expressing their desire to be together. They also plotted to kill the victim. As their plan solidified, Stelmasek told Farris where all weapons were located inside the Prescott home she shared with the victim and their daughter, then 16.

¶4　　　Stelmasek and her daughter drove from Arizona to California in two cars in late May 2011 to visit friends. Stelmasek separately returned to Arizona on June 1, 2011, picked up Farris at Sky Harbor airport, and drove him to a motel in Prescott.

---

[1]　　　The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]　　　We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93, 314 P.3d 1239, 1264 (2013).

¶5 Later that evening, Farris took a cab to the Stelmaseks' neighborhood. Hours later, Farris checked out of the motel, leaving numerous "bloody rags" behind.

¶6 Two days later, Farris flew from Albuquerque, New Mexico to North Carolina, his home state. The same day, Stelmasek's daughter returned home, and Stelmasek told her that her father had left them and did not want either of them to contact him. The next morning, Stelmasek told her daughter that "she had to get away," and then flew to North Carolina to join Farris.

¶7 The victim's body was discovered bundled in blankets inside the Stelmaseks' van on June 5, 2011, at the Albuquerque airport. By then, his body was significantly decomposed, and was not immediately identifiable. Investigators, however, discerned numerous stab wounds.

¶8 Unsure where the victim was murdered, Albuquerque authorities contacted the Prescott police, and local officers conducted a welfare check at the Stelmaseks' home. They found the daughter home alone, and she did not know where her parents were. Officers showed her a picture of the blanket the victim had been wrapped in, and she recognized it as one that had been on her parents' bed. Officers then obtained a search warrant for the residence and, using a chemical to detect the presence of blood, discovered substantial blood residue in the master bedroom and a trail of blood residue from the master bedroom to the garage.

¶9 On June 14, 2011, Stelmasek and Farris were arrested together, in North Carolina. Stelmasek was charged with first-degree murder (Count I), conspiracy to commit murder (Count II), tampering with physical evidence (Count III), concealing a dead body (Count IV), and child abuse (Count V).[3] The State also alleged three aggravating circumstances.

¶10 At trial, Stelmasek unsuccessfully argued that her communications to Farris discussing a possible murder of her husband were only "fantasy" and she did not actually believe that Farris would kill him. She was convicted by the jury on all counts. She was sentenced to natural life for murder, a consecutive prison term of twenty-five years to life for conspiracy to commit murder, a concurrent, presumptive term of one year imprisonment for tampering with evidence, and a concurrent,

---

[3] Before trial, the court granted Stelmasek's uncontested motion to sever the child abuse charge. After the verdicts, the court granted the State's motion to dismiss that charge without prejudice.

presumptive term of one and one-half years' imprisonment for concealing a dead body. Stelmasek then timely appealed the convictions and sentences.

¶11 Subsequently, the trial court ordered Stelmasek to pay restitution of $2,603.08 for funeral expenses and travel costs. She timely filed an appeal from that order. This court consolidated the appeals, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).[4]

## DISCUSSION

### I. Admission of Stun Gun Evidence

¶12 Stelmasek contends the trial court improperly admitted evidence regarding the purchase of a stun gun. She argues the evidence was irrelevant because there was no proof that a stun gun was used to commit the murder. In addition, she asserts the stun gun evidence lacked sufficient foundation because the State failed to present any direct evidence that she purchased the weapon.

¶13 We review a trial court's evidentiary ruling for an abuse of discretion. *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42, 140 P.3d 899, 912 (2006). "Absent a clear abuse of discretion, we will not second-guess a trial court's ruling on the admissibility or relevance of evidence." *State v. Rodriguez*, 186 Ariz. 240, 250, 921 P.2d 643, 653 (1996).

¶14 Before trial, Stelmasek moved to preclude any reference to the purchase of a stun gun from a California military surplus store on June 1, 2011, arguing the evidence was irrelevant, "unreliable and unsubstantiated innuendo." After a hearing, the court denied the motion, concluding Stelmasek's challenges to the evidence went to its weight, not its admissibility.

¶15 At trial, and consistent with its pretrial representations to the court, the State introduced evidence that Stelmasek called the military surplus store the evening of May 31, 2011, approximately forty minutes before the store closed. Before and after this call, Stelmasek and Farris exchanged calls and texts. The following morning, and before the store opened at 10:00 a.m., Stelmasek and Farris again exchanged numerous calls and texts. Between 10:00 a.m. and 10:30 a.m., service to Stelmasek's cell

---

[4] We cite to the version of the statute in effect at the time of trial unless otherwise noted.

phone switched to the cell tower that serviced the military surplus store, though several other cell towers were in closer proximity to the residence she was visiting. During this thirty-minute period, Stelmasek called Farris four times.

**¶16** No employee from the military surplus store could identify Stelmasek as a customer, and there was no available surveillance video from June 1, 2011. However, store personnel produced the first sales receipt of June 1, 2011, which reflected a cash purchase of a stun gun and pepper spray.

**¶17** An Albuquerque medical investigator testified that she did not observe any burn marks consistent with a stun gun on the victim's body. She explained, however, that the level of decomposition and loss of blood compromised her ability to evaluate the body, and specifically stated that burn marks may have been inflicted but rendered indiscernible by the decomposition. Likewise, a forensic pathologist testified that decomposition may have obscured any injury to the body caused by a stun gun.

**¶18** Relevant evidence is admissible unless it is otherwise precluded by the federal or state constitution, an applicable statute, or rule. Ariz. R. Evid. 402. Evidence is relevant if it has "any tendency" to make a fact of consequence in determining the action "more or less probable than it would be without the evidence." Ariz. R. Evid. 401.

**¶19** In this case, the State charged Stelmasek with premeditated murder, under a theory of accomplice liability, and conspiracy to commit murder. Given the charges and the State's framing of the case, the issues before the jury included whether Stelmasek: (1) solicited, aided, or enabled Farris to kill her husband, and (2) entered an agreement with Farris that one of them would kill the victim. *See* A.R.S. §§ 13-301, -1003, and -1105. Because she contested the State's theory and evidence, the evidence that Stelmasek purchased a device designed to immobilize a person the day of the murder tended to make a fact of consequence more probable. Specifically, the evidence that Stelmasek obtained a weapon that could subdue a person, and was in near constant communication with Farris during its acquisition, tended to show that she intended to kill her husband, acted with intent to aid in her husband's murder, and had agreed with Farris that one of them would commit the offense.

**¶20** Moreover, we disagree with Stelmasek's argument that the stun gun evidence was irrelevant because she and Farris never mentioned

the use of a stun gun in their emails and the State failed to prove the weapon was used on the victim. There was no trial evidence that ruled out the use of a stun gun during the murder, and the purchase of a stun gun tends to demonstrate that Stelmasek conspired and actively participated in the murder, regardless of the emailed plans or the manner in which Farris ultimately killed the victim. Or, stated differently, a murder is premediated when the perpetrator acts with intention or knowledge and such intention or knowledge precedes the killing by any length of time sufficient to permit reflection, A.R.S. §§ 13-1101(1), -1105, and that evidence is not irrelevant even if the planned means of committing the murder remains fluid or subject to change.

¶21        Likewise, because the requisite elements of conspiracy to commit murder are established once a person agrees with another that at least one of them will commit a murder, the fact that the eventual method of killing deviates from the conspirators' plans does not make the evidence irrelevant. *See* A.R.S. § 13-1003, -1105. Therefore, because the stun gun receipt had some tendency to make a fact of consequence more probable, it was relevant, but only if the State offered sufficient proof that Stelmasek was the purchaser. *See* Ariz. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later.").

¶22        "[A]s a condition precedent to admissibility," a party seeking to introduce evidence must produce proof "sufficient to support a finding that the matter in question is what its proponent claims." *State v. George*, 206 Ariz. 436, 446, ¶ 30, 79 P.3d 1050, 1060 (App. 2003) (citing Ariz. R. Evid. 901(a)). "This standard is satisfied if the evidence can be identified by its distinctive characteristics, taken in conjunction with the circumstances of the case." *Id.* (citing Ariz. R. Evid. 901(b)(4)).

¶23        The authentication requirement of Rule 901 may be satisfied by circumstantial evidence. *State v. Best*, 146 Ariz. 1, 2, 703 P.2d 548, 549 (App. 1985). Indeed, a party may rely upon circumstantial and corroborating evidence, as well as the evidence, to establish its authenticity. *See State v. Lavers*, 168 Ariz. 376, 388, 814 P.2d 333, 345 (1991). In ruling on admissibility, "[t]he question for the trial judge is not whether the evidence is authentic, but only whether evidence exists from which the jury could reasonably conclude that it is authentic." *State v. Wooten*, 193 Ariz. 357, 368, ¶ 57, 972 P.2d 993, 1004 (App. 1998).

¶24 Applying the principles here, the State presented sufficient foundation for the admission of the stun gun evidence. Stelmasek does not dispute that the store receipt is a valid document evidencing the purchase of a stun gun on the morning in question. Rather, she challenges the lack of direct evidence that she was the purchaser. Although there was no direct evidence that she purchased the stun gun, the State presented substantial circumstantial and corroborating evidence that Stelmasek purchased the stun gun. It is uncontroverted that she called the military surplus store shortly before closing time the evening before the murder. And she does not contest that the only time her phone was serviced by the cell tower located near the military surplus store during her visit to California was between 10:00 a.m. and 10:30 a.m. on June 1, 2011; a period corresponding to the time the stun gun was purchased. Given these facts, the trial court did not abuse its discretion by admitting the stun gun evidence.

## II.     Preclusion of Farris's Police Interview Statements

¶25 Stelmasek contends the trial court improperly precluded Farris's interview statements to authorities following his arrest. Specifically, she argues the ruling prevented her from fully presenting her defense that Farris acted alone in killing the victim and did so without her knowledge or agreement.

¶26 Before trial, the State moved in limine to preclude all evidence of Farris's police interview statements that Stelmasek "didn't do anything" and was, herself, a "victim." Citing Farris's testimony from his own trial, in which he admitted that he had lied when he made those statements, the State argued the statements failed to comport with the Rule 804(b)(3) hearsay exception for statements against interest.

¶27 After a hearing on the State's motion, the court found Farris's statements were circumstantially against his interest, though he never expressly identified himself as "the culprit" during the interview. The court further found, however, that Farris's characterization of Stelmasek as a victim and claim that she took no part in the murder were "in complete contradiction" to his sworn trial testimony, and therefore "unreliable at best." On that basis, the court precluded all evidence of Farris's police interview statements.

¶28 We review the admissibility of third-party culpability evidence for an abuse of discretion. *State v. Prion*, 203 Ariz. 157, 161, ¶ 21, 52 P.3d 189, 193 (2002). The normal restrictions on hearsay apply to third-party culpability evidence. *State v. Machado*, 224 Ariz. 343, 358, ¶ 40, 230

P.3d 1158, 1173 (App. 2010), *abrogated on other grounds as recognized in State v. Nottingham*, 231 Ariz. 21, 26 n.4, ¶ 13, 289 P.3d 949, 954 n.4 (App. 2012)). Because Stelmasek offered Farris's statements to prove she played no role in the victim's murder, the statements were plainly hearsay. *See* Ariz. R. Evid. 801(c) (defining hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted").

¶29        Pursuant to Rule 804(b)(3), a defendant may offer a hearsay statement as evidence tending to exonerate the defendant if: (1) the declarant is unavailable, (2) the statement tended to subject the declarant to criminal liability at the time the statement was made such that "a reasonable person in the declarant's position" would have made the statement "only if the person believed it to be true," and (3) "corroborating circumstances clearly indicate its trustworthiness." Accordingly, a trial court determining the admissibility of a statement under this exception "must examine any evidence that corroborates or contradicts the statement to find whether a reasonable person could conclude that the statement is true." *Machado*, 224 Ariz. at 358, ¶ 40, 230 P.3d at 1173 (internal quotations omitted).

¶30        The State does not contest that Farris, charged as a codefendant, was unavailable to testify. Although Farris did not directly inculpate himself during the police interview, the State concedes, consistent with the trial court's finding, that his "statements were circumstantially against [his] interest." Therefore, the only question remaining is whether corroborating circumstances clearly indicate the statements' trustworthiness.

¶31        On this record, there are no corroborating circumstances demonstrating the statements are true and reliable. Farris testified that he lied throughout his police interview. He also testified that Stelmasek stabbed the victim to death, and explained that he initially believed Stelmasek was a victim because he had been "duped" and "played." More importantly, Farris's claim that Stelmasek was innocent of any wrongdoing is undermined by the following: (1) her emails to Farris provide overwhelming evidence that she was not a passive, uninformed bystander, but an active conspirator in the murder; (2) she rejected Farris's suggestion that she pursue an alternative means of leaving her husband and originated the idea of murdering him; and (3) she disclosed the location of all the weapons in her home in response to Farris's email containing a detailed murder plan. Moreover, Stelmasek's post-murder conduct undermines Farris's claim that she was innocent of any wrongdoing. Most notably, she told her daughter that the victim had left them, then flew across the country

to reunite with Farris, then failed to respond to her daughter's calls and texts.

¶32        Likewise, any contention that the victim abused Stelmasek is contradicted by substantial evidence.   Although Stelmasek, in her emails to Farris, described her husband as controlling and alluded to possible abuse, there was myriad testimony from neighbors and friends describing that she was quite assertive with the victim; those witnesses denied seeing any physical abuse.   Therefore, because there is only minimal evidence corroborating Farris's statements, and the overall record substantially contradicts them, the court did not abuse its discretion by excluding Farris's police interview statements.

### III.    Preclusion of Other Acts Evidence

¶33        Stelmasek contends the trial court improperly excluded evidence of Farris's other acts.  Specifically, she asserts the court infringed on her right to present a full defense by excluding evidence that Farris had previously assaulted another girlfriend, J.S., with a knife and attacked her boyfriend.  Stelmasek claims the evidence would have demonstrated that Farris was both spontaneously violent and manipulative.

¶34        Before trial, the State moved to preclude all evidence of Farris's other acts related to J.S.  In response, Stelmasek argued the other acts were third-party culpability evidence that tended to prove Farris acted alone in murdering the victim.  At a hearing on the motion, the court stated that the evidence would be irrelevant if the parties simply stipulated that Farris had already been convicted of the murder, to which defense counsel replied, "I don't disagree with you."  The State declined to stipulate to Farris's conviction, but avowed that it would not put forward any evidence or argument that Stelmasek stabbed the victim, and would only pursue a theory of accomplice liability for the murder.  Based on that avowal, the court questioned how the evidence of Farris's prior acts remained relevant, and defense counsel acknowledged that "perhaps" the evidence lost "its relevancy."  The court then granted the State's motion, concluding the prejudicial impact of the evidence outweighed any remaining probative value.

¶35        The admission of third-party culpability evidence is governed by Rules 401 through 403, not Rule 404(b). *State v. Machado*, 226 Ariz. 281, 284, ¶ 16, 246 P.3d 632, 635 (2011); *Prion*, 203 Ariz. at 161, ¶ 22, 52 P.3d at 193.   Accordingly, when evaluating the admissibility of third-party culpability evidence, the general rules of evidence apply and evidence

"must simply be relevant and then subjected to the normal 403 weighing analysis between relevance, on the one hand, and prejudice or confusion on the other." *Prion*, 203 Ariz. at 161, ¶ 22, 52 P.3d at 193. Third-party culpability evidence "is relevant only if it tends to create a reasonable doubt as to the defendant's guilt." *State v. Alvarez*, 228 Ariz. 579, 581, ¶ 4, 269 P.3d 1203, 1205 (App. 2012) (internal quotation omitted).

¶36 Although evidence that Farris previously attacked another girlfriend and her boyfriend may have further inculpated him, that evidence would not have exculpated Stelmasek. Indeed, Farris's capacity for violence and manipulation was not in dispute. The prosecutor, during opening statements, informed the jury that Farris "almost certainly" was the one who "plunged the knife" into the victim, and during closing argument, characterized Farris as "clearly [] dangerous, deadly, distorted, [and] demented." Given the evidence and the State's theory, Farris's role as the primary actor in the murder did not lessen Stelmasek's culpability or controvert the overwhelming evidence that she acted as an accomplice and co-conspirator. *See Alvarez*, 228 Ariz. at 582, ¶ 9, 269 P.3d at 1206 (concluding third-party culpability evidence was not relevant because, even if the third party was culpable, he could have acted as the defendant's accomplice and the evidence did not suggest that someone other than the defendant committed the crime). Therefore, the court did not abuse its discretion by precluding the evidence as irrelevant.

¶37 Moreover, even if the evidence was minimally relevant, any error in its exclusion was harmless. First, it was cumulative to other evidence at trial. *See State v. Dunlap*, 187 Ariz. 441, 456-57, 930 P.2d 518, 533-34 (App. 1996) (explaining an erroneous evidentiary ruling excluding cumulative evidence was harmless beyond a reasonable doubt). Stelmasek presented numerous emails Farris wrote vividly describing violent acts he threatened to commit on the victim and boasting about his ability to "abuse[]," "break," and "control[]" people. Second, the record uniformly demonstrates that Stelmasek solicited her husband's murder, and provides no factual basis to begin to conclude that Farris pressured or manipulated her into committing the crimes. Therefore, the exclusion of Farris's prior acts did not affect the verdict and, if error, was harmless. *See State v. Anthony*, 218 Ariz. 439, 446, ¶ 39, 189 P.3d 366, 373 (2008).

**CONCLUSION**

¶38        We affirm Stelmasek's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA