NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DAVID PONCE, *Appellant.*

No. 1 CA-CR 17-0119
FILED 9-6-2018

Appeal from the Superior Court in Maricopa County
No. CR2015-001572-001
The Honorable Gregory Como, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Elizabeth B. N. Garcia
*Counsel for Appellee*

Stephen M. Johnson PC, Phoenix
By Stephen M. Johnson
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge Peter B. Swann joined.

---

**H O W E**, Judge:

**¶1**         David Ponce appeals his convictions and sentences for molestation of a child, sexual conduct with a minor, sexual exploitation of a minor, furnishing obscene or harmful items to a minor, aggravated assault, and kidnapping. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**         We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509 ¶ 93 (2013). In March 2013, Ponce's 16-year-old daughter, K.P., confided to her mother ("Mother") that Ponce had repeatedly sexually abused her when she was 11 and 12 years old. Mother immediately removed K.P. from the family residence and accompanied her to her paternal grandparents' home. Shortly after they arrived, Mother relayed K.P.'s sexual abuse allegations to her in-laws and K.P. told her grandmother and aunt that she had documented the abuse in a notebook diary.

**¶3**         At the grandmother's prompting, Mother contacted the police. After K.P. spoke with an officer and submitted a written account of the abuse, Mother obtained an order of protection against Ponce. The next morning, Mother traveled with K.P. and her younger daughter, E.P., to California to stay with her parents while waiting for service of the protection order.

**¶4**         When Mother, K.P., and E.P. returned to the family residence about a week later, they found that it had been "ransacked." Once Mother contacted the police, she and her daughters surveyed the home and discovered that numerous items were missing, including K.P.'s diary.

**¶5**         In the weeks that followed, Mother divulged K.P.'s abuse allegations to a family friend. When this friend later discussed the reported abuse with her own daughter, B.B., she learned that B.B. had a sexual relationship with Ponce several years earlier when B.B. was only 15 years old. Meanwhile, E.P. disclosed to a counselor that Ponce had repeatedly

compelled her to watch child pornography with him when she was a young child.

**¶6**        As part of an ensuing police investigation, officers executed a search warrant on the paternal grandparents' home, where Ponce had relocated. They seized several computers and other electronic devices that had been removed from the family residence, but did not locate K.P.'s diary. Through subsequent forensic analysis of the devices, officers recovered numerous videos and images, including several photographs displaying the genitals of unidentified females.

**¶7**        The State charged Ponce with six counts of sexual conduct with a minor (Counts 1, 3–4, and 8–10: Victims K.P. and B.B.), two counts of molestation of a child (Counts 2 and 7: Victim K.P.), one count of aggravated assault (Count 5: Victim K.P.), one count of sexual exploitation of a minor (Count 6: Victim K.P.), four counts of furnishing obscene or harmful items to a minor (Counts 11–13, 15: Victim E.P.), and one count of kidnapping (Count 14: Victim E.P.).[1] The State also alleged numerous aggravating circumstances.

**¶8**        After trial, the jury found Ponce guilty as charged. The trial court sentenced Ponce to presumptive terms on each count, including four consecutive life sentences. Ponce timely appealed.

## DISCUSSION

### 1. Preclusion of Email Evidence

**¶9**        Ponce argues that the trial court improperly precluded evidence of an email that K.P. purportedly sent to her brother and sister-in-law, A.P. Because the email stated that K.P.'s sexual abuse allegations were false, Ponce contends that the court's preclusion ruling deprived him of his constitutional right to present a complete defense. He further asserts that the court improperly curtailed his cross-examination of the lead detective about the police investigation into the email's source.

**¶10**      Before trial, the State moved to preclude any evidence regarding the email. The State, arguing lack of foundation, explained that (1) the email was sent from K.P.'s maternal grandmother's account,

---

[1]     As set forth in the indictment, the State also charged Ponce with four counts of surreptitiously photographing, videotaping, filming or digitally recording (Counts 16–19: Victim Mother), but Ponce moved to sever those counts for trial, which the trial court granted.

(2) attempts to identify the associated IP address were unsuccessful, (3) the service provider had erased the login data entered at the relevant time, and (4) K.P. denied sending the email. In addition, the State argued that the email's content belied any claim that K.P. had authored it. First, the email stated, "I just didn't know how else to get a hold of you," but K.P. and A.P. regularly spoke over the phone and exchanged text messages. Second, the email contained inaccurate information about Mother's move to a new house with her daughters. Third, the email's writing style differed markedly from other writings K.P. authored around the same time.

¶11　　　At a hearing on the State's motion, the trial court agreed that "serious questions [existed] about whether the defense w[ould] be able to lay the foundation to get that email into evidence." Defense counsel acknowledged that he may be unable to do so by stating, "[i]f I can't lay the foundation, I can't lay the foundation[.]" Defense counsel nonetheless argued that he could refer to the email during his opening statement based on "a good-faith [belief] that the evidence w[ould] come in[.]" As support for this claim, defense counsel suggested that Ponce might testify that the email reflects K.P.'s tone. After hearing from the parties, the trial court warned defense counsel to "tread very carefully" if he elected to mention the email during opening statements and further admonished that no discussion "about the contents" of the email could be presented to the jury absent a subsequent finding of admissibility.

¶12　　　As part of his opening statement, defense counsel referred to the email, explaining that K.P. purportedly sent it, but that Mother claimed Ponce authored it when she presented it to the police. Defense counsel also told the jurors that the email stated that K.P.'s sexual abuse allegations against Ponce were false. When defense counsel questioned K.P. about the email on cross-examination, K.P. acknowledged that she had "set up" her maternal grandmother's email account and was aware that an email relevant to the case had been sent from that address. K.P. explained that the email had been sent to her brother and A.P. and that Mother had provided her with a copy, but K.P. denied that she had sent the email. Defense counsel likewise raised the email while cross-examining Mother, asking when she had received it. After sustaining the State's objection, the court "cautioned" defense counsel not to refer to the contents of the email. Mother then testified that she believed either Ponce or a member of his family had sent the email.

¶13　　　The next day, the court addressed the email's admissibility and found that no evidence was presented that would allow a jury to reasonably conclude the email was authentic. In reaching this conclusion,

4

the court specifically noted that (1) the email was not sent from K.P.'s email account, (2) the email contained inaccurate factual information, and (3) no other evidence corroborated that K.P. wrote the email.

**¶14**     Later, the State objected when defense counsel questioned the lead detective about police efforts to ascertain who had sent the email. Given its previous ruling that defense counsel could not reveal the contents of the email to the jury, the court sustained the State's objection and held that the nature of any police investigation relating to the email was irrelevant and potentially confusing.

### 1a. Lack of Foundation

**¶15**     We review a trial court's evidentiary ruling for an abuse of discretion. *State v. Ellison*, 213 Ariz. 116, 129 ¶ 42 (2006). "Absent a clear abuse of discretion, we will not second-guess a trial court's ruling on the admissibility or relevance of evidence." *State v. Rodriguez*, 186 Ariz. 240, 250 (1996).

**¶16**     "[A]s a condition precedent to admissibility," a party seeking to introduce evidence must produce proof "sufficient to support a finding that the matter in question is what its proponent claims." *State v. George*, 206 Ariz. 436, 446 ¶ 30 (App. 2003). "[T]his standard is satisfied if the evidence can be identified by its distinctive characteristics taken in conjunction with the circumstances of the case." *Id.* Arizona Rule of Evidence 901's authentication requirement may be satisfied by circumstantial evidence. *State v. Best*, 146 Ariz. 1, 2 (App. 1985); *see also State v. Adamson*, 136 Ariz. 250, 257 (1983) (holding that a typewritten note with a typewritten signature could be authenticated by circumstantial evidence). In ruling on admissibility, "[t]he question for the trial judge is not whether the evidence is authentic, but [] whether evidence exists from which the jury could reasonably conclude that it is authentic." *State v. Wooten*, 193 Ariz. 357, 368 ¶ 57 (App. 1998).

**¶17**     Applying these principles here, Ponce failed to present sufficient evidence from which the jury could have reasonably concluded that the email was authentic. First, the email had not been sent from K.P.'s own email account. Second, the parties do not dispute that the email contained inaccurate information about Mother and her daughters' relocation to a new home. Third, contrary to the email's representations, K.P.'s contact with her brother and sister-in-law was not limited and she had regularly communicated with her sister-in-law by phone. Finally, K.P. unambiguously denied authoring the email. *Cf. State v. Damper*, 223 Ariz.

572, 577 ¶ 19 (App. 2010) (concluding that sufficient evidence existed to properly authenticate a text message as sent from a certain individual based on the recipient's testimony that she often communicated with that individual by text message, had saved the individual's cell phone number in her own cell phone, denominated by a nickname, and when the text message at issue arrived, her phone displayed that nickname as the sender of the message). Although defense counsel proffered that Ponce might testify that he recognized the email's tone as K.P.'s writing, the trial court did not abuse its discretion by finding such self-serving identification testimony would fail to provide sufficient circumstantial evidence to authenticate. Therefore, a jury could not reasonably conclude that K.P. authored the email.

### 1b. Limits on Cross-Examination

**¶18**         Trial courts "retain wide latitude to impose reasonable limits on cross-examination to prevent confusion of the issues or interrogation that is only marginally relevant." *State v. Buccheri-Bianca*, 233 Ariz. 324, 328 ¶ 8 (App. 2013). Accordingly, a court's ruling restricting cross-examination will be upheld absent an abuse of discretion. *State v. Sucharew*, 205 Ariz. 16, 21 ¶ 9 (App. 2003). Generally, relevant evidence is admissible unless it is otherwise precluded by the federal or state constitutions, an applicable statute, or rule. Ariz. R. Evid. 402. Evidence is relevant if it has "any tendency" to make a fact of consequence in determining the action "more or less probable than it would be without the evidence[.]" Ariz. R. Evid. 401. Relevant evidence may be excluded, however, if its probative value "is substantially outweighed" by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Ariz. R. Evid. 403.

**¶19**         Here, once the trial court determined that Ponce had failed to authenticate the email, the police investigation into the source of the email became a collateral matter that could potentially confuse the jury. *See Buccheri-Bianca*, 233 Ariz. at 328 ¶ 8 (explaining that a trial court may limit questioning that is "collateral to the issues at trial and would potentially confuse the jury[]"). Therefore, under these circumstances, the court did not abuse its discretion by curtailing defense counsel's cross-examination of the detective regarding his investigation into the source of the email.

### 2. Preclusion of Polygraph Evidence

**¶20**         Ponce contends that the trial court improperly precluded evidence regarding polygraph tests that were either ordered for or

performed on him and Mother as part of a 1999 custody evaluation. He argues that this preclusion ruling deprived him of his constitutional right to present a full defense. He is incorrect.

**¶21** Before trial, the State moved to preclude any evidence of exams conducted on Ponce and Mother during the 1999 custody evaluation. After hearing argument on the motion, the trial court precluded any evidence that a polygraph test was ordered or conducted as part of that proceeding.

**¶22** A defendant has a due process right to have "a meaningful opportunity to present a complete defense." *State v. Lehr*, 227 Ariz. 140, 150 ¶ 39 (2011). This right to present a complete defense "is not unlimited," however, and "is subject to reasonable restrictions[.]" *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Because polygraph examinations are considered "unreliable," Arizona law is well-settled that absent a stipulation, any reference to a polygraph test is "inadmissible for any purpose[.]" *State v. Hoskins*, 199 Ariz. 127, 144 ¶ 69 (2000). In this case, the parties did not stipulate to the admission of evidence regarding polygraph exams. Therefore, the trial court did not abuse its discretion by excluding that evidence.

### 3. Limits on Scope of Opening Statements

**¶23** Ponce argues that the trial court improperly restricted his opening statements by precluding him from discussing the email and polygraph evidence. A defendant is entitled to make an opening statement advising the jury of the facts he will rely on, and thereby provide context for the evidence to be admitted at trial. Ariz. R. Crim. P. 19.1(b)(3); *see also State v. Pedroza-Perez*, 240 Ariz. 114, 116 ¶ 9 (2016). Stated differently, an "opening statement affords the defense an opportunity to explain [its] theory of the case, to provide the jury an alternative interpretive matrix by which to evaluate the evidence, and to focus the jury's attention on the weaknesses of the government's case." *Id.*

**¶24** "Although a defendant enjoys considerable latitude in making an opening statement, it should not include statements which will not or cannot be supported by proof." *Id.* at ¶ 10 (internal citations omitted). "Specific evidence may be referenced in the opening statement as long as the proponent has a good faith basis for believing the proposed evidence exists and will be admissible." *Id.* at ¶ 12. The trial court "may require a party to identify the good faith basis for the proffered evidence, but may not impose a more exacting standard for inclusion in the opening

statement." *Id.* We review a trial court's ruling restricting the content of opening statements for an abuse of discretion. *Id.* at ¶ 8.

**¶25** With respect to Ponce's email claim, the record reflects that the trial court did not preclude defense counsel from discussing the email during opening statements. Rather, the court warned defense counsel to "tread carefully" when referring to the email, and admonished him to avoid mentioning the email's contents. Notwithstanding this exhortation, defense counsel informed the jurors that K.P. purportedly wrote an email denying her abuse allegations. The State did not object to this portion of defense counsel's opening remarks, however, and the court did not strike it. Therefore, on this record, the court appropriately exercised its discretion regarding defense counsel's opening statement.

**¶26** Turning to the polygraph evidence, the trial court indeed precluded any reference to a polygraph test during opening statements. But because evidence regarding such a test was inadmissible absent a stipulation—and the parties did not stipulate to its admission—the court did not abuse its discretion by limiting defense counsel's opening statements in that respect.

### 4. Admission of Detective's Testimony

**¶27** Ponce argues that the trial court improperly permitted the lead detective to testify that A.P. no longer supported him. We generally review a trial court's evidentiary rulings for an abuse of discretion. *Ellison*, 213 Ariz. at 129 ¶ 42. We review de novo, however, evidentiary rulings implicating the Confrontation Clause. *Id.*

**¶28** The lead detective mentioned that he had interviewed A.P. in his direct testimony. On cross-examination, defense counsel questioned the detective extensively about A.P., and elicited testimony that A.P. had testified on Ponce's behalf during a 2013 divorce proceeding. On redirect, the prosecutor asked the detective whether A.P. had "actually" testified on Ponce's "behalf." The detective responded that A.P. had testified in support of Ponce "because at that time she believed him[.]" Defense counsel objected to the latter part of this response and the court struck that portion of the detective's testimony. The prosecutor then asked the detective whether A.P. continued to support Ponce. At that point, defense counsel objected again and the parties approached the bench. Although defense counsel agreed that A.P.'s continued support or lack thereof was relevant, he challenged the detective's ability to testify on the matter, and argued that the State needed to call A.P. as a witness to present that evidence.

Specifically, defense counsel argued that the detective lacked personal knowledge of A.P.'s allegiances, and therefore any testimony he provided would necessarily be "entirely based on . . . hearsay[.]"

¶29　　　　After hearing from the parties, the trial court overruled defense counsel's objection, finding that the detective had personal knowledge of A.P.'s lack of support based on his interview with her. Accordingly, when the prosecutor resumed redirect, he again asked the detective about his "understanding" of A.P.'s support for Ponce at the time of the interview. When the detective stated that "[s]he told me she did not believe," defense counsel objected. The court sustained the objection and admonished the detective not to relay any statements A.P. made during the interview. The prosecutor then asked whether A.P.'s initial support of Ponce had "changed" by the time of the interview, and the detective responded, "[i]t had."

¶30　　　　As set forth in Arizona Rule of Evidence 602, a witness "may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Accordingly, "lay testimony may include inferences or opinions" only if the witness perceived or observed that which he testifies to. *State v. Ayala*, 178 Ariz. 385, 387–88 (App. 1994). On this record, the detective's opinion testimony about A.P.'s allegiance was not based on events that he had perceived or observed, but on her statements. That is, the detective did not testify that he formed his opinion after witnessing A.P.'s attitude or behavior toward Ponce; rather, he reached his conclusion based on the content of her interview.

¶31　　　　Out-of-court statements offered to prove the truth of the matter asserted are generally inadmissible absent a hearsay exception. Ariz. R. Evid. 801(c), 802. The Confrontation Clause bars testimonial hearsay—including statements given in response to formal police questioning—when the declarant does not appear at trial, unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59 (2004). Although the detective did not directly recount an out-of-court statement, he implied that A.P. had told him that she no longer believed or supported Ponce. Because nothing shows that A.P. was unavailable to testify, this evidence was testimonial hearsay admitted in violation of Ponce's Confrontation Clause rights.

¶32　　　　A Confrontation Clause violation, however, is subject to harmless error review. *State v. Parks*, 211 Ariz. 19, 31 ¶ 54 (App. 2005). Error is harmless if we can conclude beyond a reasonable doubt that it did not

contribute to or affect the verdict. *State v. Henderson*, 210 Ariz. 561, 567 ¶ 18 (2005). To assess whether a Confrontation Clause violation is harmless, we consider several factors, including "the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

¶**33** Applying this standard here, the record reflects that the detective's testimony regarding A.P.'s loyalties was not significant to the prosecution's case. Indeed, the prosecutor elicited only a passing reference to the detective's interview with A.P. on direct examination. Defense counsel questioned the detective extensively about A.P. on cross-examination, however, and elicited testimony that A.P. had testified on Ponce's behalf in 2013. This line of questioning placed A.P.'s allegiance in the case at issue, and the State attempted to refute the suggestion that A.P. supported Ponce in the present matter by introducing evidence that her support had waned. Importantly, this evidence did not directly relate to any element of the charged offenses and the State did not affirmatively use it to prove its case. Therefore, given the collateral nature of the challenged evidence and the overall strength of the State's case, the court's erroneous admission of this portion of the detective's testimony was harmless beyond a reasonable doubt.

### 5. Amendment to the Indictment

¶**34** Ponce contends that the trial court improperly granted the State's motion to amend Counts 5 and 7. He argues that the amendments substantively changed the charges and did not constitute the mere correction of technical errors. We review the trial court's amendment of an indictment for an abuse of discretion. *State v. Johnson*, 198 Ariz. 245, 247 ¶ 4 (App. 2000).

¶**35** After presenting its case-in-chief, the State moved to amend several counts of the indictment. For Counts 1–8, involving victim K.P., the State moved to amend the associated dates of commission for each count to "December 8, 2007 to December 8, 2009," consistent with K.P.'s testimony that Ponce committed all the acts of sexual abuse when she was 11 and 12 years old. In addition, the State moved to modify the "to wit" language on Count 5, which initially read, "the time her sister was in the hospital/rubbing butt" to add the qualifying words "in the bedroom," such that the amended Count 5 alleged "the time her sister was in the

hospital/rubbing butt in the bedroom." Likewise, the State moved to amend the "to wit" language of Count 7, which initially read, "the time her sister was in the hospital/rubbing vagina" to add the qualifying words "in the shower," such that the amended Count 7 alleged "the time her sister was in the hospital/rubbing vagina in the shower." In moving to amend the "to wit" language, the State explained that K.P. had testified to two incidents that were consistent with the offense set forth in Count 5 and to two incidents that were consistent with the offense set forth in Count 7. The State asserted that the greater specificity afforded by the amendments would avert any potential claim of duplicitous charges. When invited to respond, defense counsel stated that although he did not object to the date amendments, which conformed to the evidence at trial, he did object to the proposed modification of the "to wit" language, arguing that such changes "would inappropriately bolster" the charges. The trial court granted the motion to amend the date ranges for Counts 1–8 and took the additional requests to amend the "to wit" language for Counts 5 and 7 under advisement. The following day, the court granted the State's motion to amend Counts 5 and 7, finding that the amendments conformed to the evidence and did not change the nature of the offenses or otherwise prejudice Ponce.

¶36 A grand jury indictment "limits the trial to the specific charge or charges" set forth in the indictment and absent a defendant's consent, "a charge may be amended only to correct mistakes of fact or remedy formal or technical defects." Ariz. R. Crim. P. 13.5(b). A defect is formal or technical "when its amendment does not operate to change the nature of the offense charged or to prejudice the defendant in any way." *Johnson*, 198 Ariz. at 247 ¶ 5 (quoting *State v. Bruce*, 125 Ariz. 421, 423 (1980)). To determine whether the offense was changed or the defendant prejudiced, we consider whether the amendment violated the defendant's right to (1) notice of the charges against him and (2) double jeopardy protection from subsequent prosecution on the original charge. *Id.* at 248 ¶ 8. Although the defendant bears the burden of showing actual prejudice, "[i]f either right has been violated, the amendment has not corrected a technical defect and is impermissible." *Id.*

¶37 Relying on *Johnson* and *State v. Mikels*, 119 Ariz. 561 (App. 1978), Ponce argues that the amendments in this case "sought to do much more than correct a mistake or remedy a formal defect." The cases Ponce cites, however, are inapposite. In *Johnson*, the defendant was brought to trial on charges that he had digitally penetrated the victim's vagina and caused the victim to touch his penis with her hand. 198 Ariz. at 247 ¶ 2. At trial, however, the victim testified that the defendant had penetrated her vagina

with his penis and forced her to place her mouth on his penis. *Id.* at ¶ 3. After the State rested, the trial court granted the State's motion to amend the counts to allege penile penetration rather than digital and oral contact rather than manual. *Id.* On appeal, this court held that the trial court improperly amended the charges, thereby causing impermissible prejudice to the defendant. *Id.* at 248 ¶ 9. Specifically, we held the defendant "was not given adequate notice of the charges with an ample opportunity to defend against them." *Id.* (internal quotes omitted).

¶38        In *Mikels*, the defendant was charged with committing an act of sodomy in a shower stall of a jail cell. 119 Ariz. at 562. At trial, the victim testified that the defendant had committed one act of sodomy against him in the shower and a second act of sodomy against him in a bunk in the jail cell. *Id.* During closing argument, "the prosecutor asked the jury to find [the defendant] guilty of the act of sodomy which occurred in the bunk," rather than the one that took place in the shower. *Id.* Although "there [was] no variance between the allegations on the face of the indictment and the proof[,]" this Court vacated the conviction, holding that the defendant "was tried for an offense which was not presented to the grand jury." *Id.*

¶39        Unlike the facts in *Johnson*, here, the charges set forth in the original indictment placed Ponce on notice of the precise offenses for which he was later tried and convicted. And unlike *Mikels*, nothing shows that Ponce was tried and convicted of offenses other than those presented to the grand jury. Although the original charges for Counts 5 and 7 were detailed, based on the evidence presented at trial, each count nonetheless encompassed two distinct criminal acts. To ensure that the jury reached a unanimous verdict, the trial court properly permitted the State to amend the charges by adding greater specificity, thereby negating the possibility that jurors would use different acts to convict Ponce of a single offense. For these reasons, the trial court did not abuse its discretion by granting the State's motion to amend the charges to conform to the evidence.

## 6. Denial of Motion for Judgment of Acquittal

¶40        Ponce contends that the trial court improperly denied his motion for judgment of acquittal, arguing that insufficient evidence supports his convictions. We review de novo a trial court's ruling on a Rule 20 motion. *State v. West*, 226 Ariz. 559, 562 ¶ 15 (2011). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at ¶ 16 (quoting *State v. Mathers*, 165 Ariz. 64, 66 (1990)). Sufficient evidence upon which a

reasonable jury can convict may be direct or circumstantial. *Id.* A judgment of acquittal is appropriate only when "there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). In reviewing the sufficiency of the evidence, we neither reweigh conflicting evidence nor assess the credibility of witnesses. *See Buccheri-Bianca*, 233 Ariz. at 334 ¶ 38. Because each count is supported by sufficient evidence, the trial court did not err in denying Ponce's Rule 20 motion.

### 6a. Counts 1, 3, 4, 8, 9, and 10—Sexual Conduct with a Minor

**¶41** Under A.R.S. § 13–1405(A), "[a] person commits sexual conduct with a minor by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person who is under eighteen years of age." As defined by statute, "'sexual intercourse' means penetration into the penis, vulva or anus by any part of the body or by any object or masturbatory contact with the penis or vulva." A.R.S. § 13–1401(A)(4).

**¶42** With respect to Counts 1, 3, and 4, Ponce argues that the lack of any corroborating evidence renders K.P.'s testimony insufficient to support the convictions. In addition, Ponce argues that B.B.'s testimony was insufficient to support the convictions for Counts 9 and 10 because her memory was admittedly hindered by years of substantial drug use. The record reflects, however, that K.P. and B.B.'s testimony established each of the elements of the offense for each count. K.P. testified that the following acts occurred before her 13th birthday:

Count 1—After being invited to swim at a friend's house, K.P. and Ponce returned home for swimsuits and Ponce removed his clothing, lied down, and physically compelled K.P. to perform oral sex on him.

Count 3—While driving K.P. home after attending a school baseball game together, Ponce pulled over and compelled K.P. to perform oral sex on him.

Count 4—While E.P. was hospitalized, Ponce removed K.P.'s clothing, lied down with her, and performed oral sex on her.

Count 8—After being invited to swim at a friend's house, K.P. and Ponce returned home for swimsuits, lied down, and Ponce physically compelled K.P. to manually touch his penis.

¶43         Unlike K.P., B.B. characterized her sexual contact with Ponce as a consensual "affair." Nonetheless, she testified that her "sexual relationship" with Ponce occurred when she was only 15 and 16 years old. She testified that the following acts occurred:

Count 9—After providing B.B. alcohol, Ponce joined B.B. in a shower and then performed oral sex on her.

Count 10—While seated in Ponce's truck, B.B. performed oral sex on him.

¶44         Because K.P. and B.B. testified that Ponce had intentionally and knowingly engaged in sexual intercourse or oral sexual contact with them when they were minors, sufficient evidence exists from which a reasonable jury could find that Ponce committed each count of sexual conduct with a minor.

### 6b. Counts 2 and 7—Molestation of a Child

¶45         "A person commits molestation of a child by intentionally or knowingly engaging in or causing a person to engage in sexual contact . . . with a child who is under fifteen years of age." A.R.S. § 13–1410(A). As relevant here, "sexual contact" means "any direct or indirect touching, fondling or manipulation of any part of the genitals [or] anus[.]" A.R.S. § 13–1401(A)(3)(a). At trial, K.P. testified to the following:

Count 2—While riding together in a car, Ponce rubbed lubricant on K.P.'s vagina.

Count 7—While E.P. was hospitalized, Ponce joined K.P. in the shower and manually washed her vagina.

¶46         Given this testimony, sufficient evidence exists from which a reasonable jury could find that Ponce intentionally and knowingly molested K.P. as charged.

### 6c. Count 5—Aggravated Assault

¶47         As relevant here, a person commits assault by "[k]nowingly touching another person with the intent to injure, insult or provoke such person." A.R.S. § 13–1203(A)(3). Such contact constitutes aggravated assault when the "person is eighteen years of age or older" and the assault is committed "on a minor under fifteen years of age." A.R.S. § 13–1204(A)(6). At trial, K.P. testified that while E.P. was hospitalized, Ponce

compelled her to remove her pants and he then touched her buttocks. On this record, sufficient evidence exists from which a reasonable jury could find that Ponce knowingly touched K.P. with the intent to insult or provoke her.

### 6d. Count 6—Sexual Exploitation of a Minor

**¶48**        As charged in this case, a person commits sexual exploitation of a minor by knowingly photographing a minor who is engaged in exploitive exhibition or other sexual conduct. A.R.S. § 13–3553(A)(1). "'Exploitive exhibition' means the actual or simulated exhibition of the genitals or pubic or rectal areas of any person for the purpose of sexual stimulation of the viewer." A.R.S. § 13–3551(5). K.P. testified that after Ponce performed oral sex on her, he took a picture of her vagina and then showed her that picture. Given this testimony, and the pictures recovered from Ponce's electronic devices that displayed the genitals of unidentified females, sufficient evidence exists from which a reasonable jury could find that Ponce knowingly photographed K.P.'s genitals for sexual stimulation.

### 6e. Counts 11, 12, 13, and 15—Furnishing Obscene or Harmful Items to a Minor

**¶49**        Under A.R.S. § 13–3506(A), "[i]t is unlawful for any person, with knowledge of the character of the item involved, to recklessly furnish, present, provide, make available, give, lend, show, advertise or distribute to minors any item that is harmful to minors." As pertinent here, an item is "harmful to minors" if it depicts nudity or sexual activity that an "average adult applying contemporary state standards" would find unsuitable for minors based on its "patently offensive" appeal to prurient interests, and taken as a whole, "does not have serious literary, artistic, political, or scientific value for minors." A.R.S. § 13–3501(1)(a)–(b).

**¶50**        At trial, E.P. testified that Ponce repeatedly compelled her to watch "very inappropriate" videos with him when she was a young child. Her testimony described the following:

Count 11—When the family lived in the "Augusta house," Ponce showed E.P. a video depicting two adult women engaging in sexual activity with a young, crying boy.

Count 12—When the family lived in the "red kitchen house," Ponce showed her a video depicting an adult man engaging in sexual activity with a young girl.

15

Count 13—When the family lived in the "Litchfield house," Ponce again showed E.P. the video depicting two adult women engaging in sexual conduct with a young, crying boy, and explained that he was using the video to "teach" her about sex.

Count 15—Ponce showed E.P. pictures of naked men and women on his iPhone or iPod.

¶51 During Mother's direct examination, the prosecutor elicited testimony about the family's residential history. Mother testified that the family lived at the "Augusta," "red kitchen," and "Litchfield" houses between 2008 and 2012. As such, Counts 11, 12, and 13 were committed when E.P. was between 8 and 12 years old. Although E.P. did not testify to the precise date Ponce committed Count 15, or tether that event to a residence, she was under age 15 when she reported the events, and was therefore necessarily a minor at the time of that offense. On this record, sufficient evidence exists from which a reasonable jury could find that Ponce knowingly showed E.P. harmful videos and pictures depicting patently offensive nudity and sexual activity.

### 6f. Count 14—Kidnapping

¶52 As relevant here and charged in the indictment, a person commits kidnapping by knowingly restraining another person with the intent to aid the commission of a felony. A.R.S. § 13–1304(A)(3). "Restrain" here "means to restrict a person's movements without consent, without legal authority, and in a manner which interferes substantially with such person's liberty, by either moving such person from one place to another or by confining such person." A.R.S. § 13–1301(2). If the victim is a minor, restraint without consent may be accomplished by physical force, intimidation, deception, or any other means. A.R.S. § 13–1301(2)(a)–(b).

¶53 While describing an incident in which Ponce compelled her to watch child pornography, E.P. testified that she told Ponce she did not want to watch the video, but he showed it to her anyway. When she tried to get away, Ponce "slapped" her "really hard," forcing her to sit back down. Although E.P. testified that she was later "free to leave," sufficient evidence exists from which a reasonable jury could find that Ponce knowingly restrained E.P. to facilitate the felony of furnishing obscene or harmful items to a minor. Therefore, the trial court did not err when it denied Ponce's motion for judgment of acquittal on this count.

### CONCLUSION

¶54        For the foregoing reasons, we affirm.

